TEXAS & PACIFIC RAILWAY COMPANY ET AL. v. RAILROAD COMMISSION OF TEXAS.

No. 2396.   Decided November 13, 1912.

1.—Supreme Court—Jurisdiction—Question of Fact.

A finding by the Court of Civil Appeals that certain orders of the Railroad Commission were not unreasonable or unjust to complainants could not be set aside unless the Supreme Court, which has no jurisdiction to determine questions of fact, could pronounce to the contrary as matter of law. (P. 290.)

2.—Interstate Commerce—Regulation of Bookkeeping.

The Act of Congress (June 29, 1906, 34 Stats. at Large, p. 584) which, under the power to regulate commerce between the states (Const. U. S., art. 1, sec. 8) authorized the Interstate Commerce Commission to prescribe for railways an uniform system of accounts and prohibited, under penalty, the keeping of any accounts, records or memoranda other than those prescribed, which included both interstate and intrastate traffic, prohibited such keeping of other accounts of the matters provided for as it affected the interstate traffic of the carriers, the regulation of which the Act sought to promote. It did not prevent the Texas Railroad Commission, under authority of the laws

of the State, from providing for such a system of accounts by railways of their business, both interstate and intrastate, as would enable that Commission to regulate rates within the State. (Pp. 390-392.)

### 3.—Bookkeeping Defined.

Bookkeeping is the art of recording in a systematic manner the transactions of merchants, traders and other persons engaged in pursuits connected with money—the art of keeping accounts. (P. 393.)

### 4.—Same—Authority to Prescribe Method.

The statute (Rev. Stats., 1895, art. 4571) giving the Railroad Commission power to prescribe a "system of bookkeeping" to be observed by railways, authorized them only to direct the method of keeping accounts of the transactions of the roads—the facts of the business. It did not authorize them to require the distribution or apportionment of the items of general expense between freight and passenger business and between interstate and intrastate traffic by arbitrary rules and upon a purely conjectural basis. (P. 393.)

### 5.—Same.

Orders requiring that certain conclusions and deductions from the business transacted by railroads should be entered upon the books to be kept by them, such as apportioning by an arbitrary rule general expenses, superintendence, maintenance, etc., between costs of freight and passenger service, was not authorized by the law empowering the Railroad Commission to prescribe a system of bookkeeping. (P. 393.)

### 6.—Same—Injunction.

The fact that the Railroad Commission exceeded its legal authority in prescribing, as a system of bookkeeping to be followed by railways, the entry of conclusions and deductions from the facts which did not fall within the proper meaning of bookkeeping, did not authorize the court, in setting aside such order of the Commission, to issue an injunction which would restrict such future action by the Commission on that subject as it might lawfully take. (P. 394.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Writ of error was obtained by the Texas & Pac. Ry. Co. and numerous other railroads, plaintiffs below, on a judgment of the Court of Civil Appeals reversing and rendering in favor of appellant Commission a judgment of the trial court granting an injunction against the enforcement of one of its orders.

*Hiram Glass, Baker, Botts, Parker & Garwood, Terry, Caven & Mills, Andrews, Ball & Streetman, A. W. Houston,* and *T. J. Freeman,* for plaintiffs in error.—A system of bookkeeping as that term is used in Article 4571, Revised Statutes of Texas, means the keeping of accounts in such a manner as to give a permanent record of business transactions from which the true state or history of railroad companies' financial affairs and dealings may, at any time, be ascertained. The keeping of accounts and the arbitrary making of permanent records on the books of the railroads that are incorrect and misleading, and that produce different results upon different roads, is not a system of bookkeeping as that term is used in said article of the statute. Therefore, the orders of the Railroad Commission of Texas, embraced in Circulars A-2 and A-4, which require plaintiffs in error to divide

their operating expenses between freight and passenger business and between State and interstate business in such a manner that the true state or history of their business can not be ascertained, do not constitute a system of bookkeeping such as the Railroad Commission of Texas is authorized to prescribe.

The fact that interstate and State traffic and commerce are moved in the same trains, pulled by the same locomotives and handled by the same train crews, and that the road-beds, buildings and management are for the use and benefit of both State and interstate traffic, renders it impossible to correctly divide the expense between State and interstate traffic; the ratio of such expenses materially differing on different roads—a basis that would be approximately correct on one road, would be grossly incorrect on another. Therefore, the orders of the Railroad Commission of Texas, as embraced in Circulars A-2 and A-4, prescribing an arbitrary basis for the division of such expenses on all railroads in Texas, which basis was shown by the evidence to be incorrect and misleading, is unjust, unreasonable and void. The same proposition applies to the division of expenses for conducting freight and passenger traffic.

The evidence introduced on the trial of this cause, if true, was, and is, sufficient to sustain the findings and judgment of the District Court, that the orders of the Railroad Commission of Texas, complained of, were, and are, unjust, unreasonable and void. Therefore, it was error for the Court of Civil Appeals to reverse and render judgment in favor of the defendants in error instead of remanding the cause to the District Court. Sheppard v. Northern Pac. Ry. Co., 184 Fed., 765; St. L. & S. F. Ry. Co. v. Hadley, 168 Fed., 317; In re Arkansas Ry. Rates, 168 Fed., 720; In re Arkansas Ry. Rates, 163 Fed., 141, 187 Fed., 290; M. K. & T. Ry. Co. v. Love, 177 Fed., 493; C. M. & St. P. Ry. Co. v. Thompkins, 90 Fed., 363; C. M. & St. P. Ry. Co! v. Thompkins, 176 U. S., 167; C. M. & St. P. Ry. Co. v. Thompkins, 110 Fed., 473; Northern Pac. Ry. Co. v. Keys, 91 Fed., 47; Ames v. Union Pac. Ry. Co., 64 Fed., 165; Smith v. Ames, 169 U. S., 466; Pennsylvania R. R. Co. v. Philadelphia County, 22 Pa. St., 100.

The Interstate Commerce Commission, acting under authority of Section 20 of the Interstate Commerce Act, having prescribed a uniform system of bookkeeping and accounts to be observed by all railroads engaged in interstate commerce, including plaintiffs in error; and Congress having enacted that such railroads shall not keep any other accounts, records or memoranda than those prescribed or approved by the Interstate Commerce Commission, the orders of the Railroad Commission of Texas, as embraced in Circulars A-2 and A-4, prescribing a system of bookkeeping and accounts, that, in many respects, conflicts with the order of the Interstate Commerce Commission, and prescribing and requiring the keeping of other and additional accounts than those prescribed or approved by the Interstate Commerce Commission, are void.

The orders of the Railroad Commission of Texas, as embraced in Circulars A-2 and A-4, require plaintiffs in error to charge to the expense of conducting interstate traffic, items of expense which are

incurred in conducting intrastate traffic, and require them to charge to the expense of conducting interstate traffic and commerce, unjust and excessive proportions of the joint expense of conducting all commerce, both State and interstate. Said orders, therefore, place an unjust and excessive burden upon interstate commerce and will interfere with and restrict such commerce, and are therefore in conflict with the commerce clause of the Constitution of the United States, and void.

The right to keep a correct set of books of accounts which reflect the actual facts of his business, is a personal and property right of which the citizen can not be deprived by legislative authority, or any governmental agency, and the orders herein complained of which seek to compel plaintiffs in error to keep a system of books in accordance with the theories of the Railroad Commission of Texas which do not reflect the facts, deprive plaintiff in error of due process of law under the Constitution of the State of Texas, and are in violation of the Fourteenth Amendment to the Constiution of the United States, which provides that ''nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.''

*Jewel P. Lightfoot,* Attorney-General, and *James D. Walthall* and *R. E. Crawford,* assistants, for defendant in error. The Railroad Commission of Texas had the jurisdiction, power and authority to make the orders attacked in this suit. Texas Constitution, sec. 2, art. 10; Revised Statutes of Texas (1895), arts. 4562, 4571; Railroad Commission v. H. & T. C. Ry. Co., 90 Texas, 340; I. & G. N. Ry. Co. v. Commission, 89 S. W., 961.

The judgment of the court is erroneous in that it assumes that the order of the Railroad Commission of Texas complained of in this case is unjust and unreasonable to plaintiffs and interveners, the complaining railway companies. Articles 4562, 4565, 4566, Revised Statutes of 1895; Railroad Commission v. Weld & Neville, 96 Texas, 408; G., C. & S. F. Ry. Co. v. Railroad Commission, 113 S. W., 747.

The order of the Railroad Commission complained of in this case is not void or unenforceable, because it would require the plaintiffs and interveners to keep their books of account in a manner that would be in conflict with the act of Congress regulating commerce or with the system of bookkeeping provided by the Interstate Commerce Commission. Act of Congress, June 29, 1906; 34 Statutes at Large, p. 584; M., K. & T. Ry. Co. v. Huber, 169 U. S., 623; United States v. The Cuba, 2 Hughes, 490, F. C., 14898.

The Railroad Commission of Texas is vested by law with authority to prescribe a system of bookkeeping to be observed by all the railroads subject to the jurisdiction of the Commission. Therefore, the court was without jurisdiction to enjoin the Commission in its future action in respect to the manner in which it would exercise its authority to prescribe a system of bookkeeping to be observed by plaintiffs and interveners. Article 4571, Revised Statutes (1895); High on Injunctions (4th ed.), sec. 1326; Marbury v. Madison, 12 Peters, 524; Commissioner of Patents v. Whiteley, 4 Wallace, 522;

Gaines v. Thompson, 7 Wallace, 347; Bates v. Taylor, 11 S. W., 266; Scoville v. Calhoun, 76 Ga., 263.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Article 4571 of the Revised Civil Statutes of 1895 (Art. 6667, Rev. Stats., 1911), contains this language: "Said commission shall have the power to prescribe a system of bookkeeping to be observed by all the railroads subject hereto, under the penalties prescribed in this article."

In the exercise of that authority the Railroad Commission of the State prescribed what it claims to be a system of bookkeeping for the government of all railroads operated within this State.

The Texas & Pacific Railway Company, the Gulf, Colorado & Santa Fe Railway Company, and other railroad companies, all engaged in operating their lines of railway in Texas, and engaged both in interstate and intrastate transportation of freight and passengers, instituted this suit in the District Court of Travis County, seeking to set aside and annul Circular A-2, by which the said commission attempted to prescribe a system of bookkeeping to govern said railroad companies in keeping their books, and sought to enjoin the said commission from making and enforcing similar orders. The trial was had before the judge of the District Court, who entered judgment according to the prayer of the petition of said railroad companies.

Upon appeal to the Court of Civil Appeals of the Third District the judgment of the District Court was reversed and judgment was entered denying any relief to the railroad companies.

For convenience, the plaintiffs in error will be called "The railroads," and the defendants in error "The Commission."

The railroads attack Circular A-2 on four grounds of objection to its validity. We state the substance of the objections:

1.   That the circular does not prescribe a system of bookkeeping.

2.   That the orders complained of are unjust and unreasonable.

3.   That the orders complained of are in conflict with the Act of Congress because the accounts required to be kept are "other and different accounts than those required by the Interstate Commerce Commission" to be kept by plaintiffs in error.

We will first dispose of the second and third grounds. We are not able to say that the orders complained of are unreasonable and unjust as a matter of law, therefore, we have no jurisdiction to determine the questions of fact.

The Constitution of the United States empowers Congress to regulate commerce between the States, as is found in the fourth paragraph of Section VIII of Article I, which reads:

"Congress shall have power * * * to regulate commerce * * * among the several states * * *."

In the exercise of that power Congress enacted a law from which we copy as follows:

"The commission (Interstate) may, in its discretion, for the purpose of enabling it the better to carry out the purposes of this act, prescribe a period of time within which all common carriers subject

to the provisions of this act shall have as nearly as may be a uniform system of accounts, and the manner in which such accounts shall be kept."

"It shall be unlawful for such carriers to keep any other accounts, records or memoranda than those prescribed or approved by the commission, and it may employ special agents or examiners, who shall have authority, under the orders of the commission, to inspect and examine any and all accounts, records and memoranda kept by such carriers. This provision shall apply to receivers of carriers and operating trustees."

"Any carrier that shall keep any other accounts, records or memoranda than those prescribed or approved by the commission, shall be deemed guilty of a misdemeanor, and shall be subject, upon conviction by any court in the United States of competent jurisdiction, to a fine of not less than $1,000.00, nor more than $5,000.00, or imprisonment for a term of not less than one year nor more than three years, or both such fine and imprisonment."

The Interstate Commerce Commission prescribed a system of bookkeeping for all railroads which are engaged in interstate transportation of passengers and freight, and said Interstate Commerce Commission required such railroads to keep accounts of their intrastate traffic as well as of their interstate traffic.

It is urged upon this court that Circular A-2 is within the prohibition of the Act of Congress which forbids any railroad company engaged in interstate commerce to keep any other accounts, etc., than those prescribed by the Interstate Commerce Commission, and in support of that contention we are cited to Interstate Commerce Commission v. Goodrich Transit Company, decided by the United States Supreme Court on April 1st, 1912, published in the Supreme Court Reporter, Vol. 32, No. 11, page 426. We have examined the provisions of the law of Congress and we believe that the prohibition contained in that law was directed against keeping other accounts, etc., of the matters provided for, as it affected the interstate traffic of such carriers. That court said:

"Bookkeeping, it is said, is not interstate commerce. True, it is not. But bookkeeping may and ought to show how a business which, in part, at least, is interstate commerce, is carried on, in order that the commission, charged with the duty of making reasonable rates and prohibiting unfair and unreasonable ones, may know the nature and extent of the business of the corporation, the cost of its interstate transactions, and otherwise to inform itself so as to enable it to properly regulate the matters which are within its authority."

The bookkeeping which was prescribed by the Texas Commission, if it were such, would not be in conflict with the order of the Interstate Commerce Commission on the same subject.

In the case cited the Supreme Court of the United States said, in substance, that the inquiry by the Interstate Commerce Commission into the intrastate business was for the securing of information necessary to the exercise of its powers over interstate business, and did not in any manner affect the interstate rates. By the same reasoning the State Commission could inquire of the interstate business as infor-

mation to aid in regulating intrastate rates. The two classes of business are so related that information as to the transaction of one class is necessary, or at least important, to aid in regulating the other. We overrule both objections.

It is objected that Circular A-2 issued by the commission does not prescribe a system of bookkeeping. We copy from Circular A-2 as follows:

"Office of RAILROAD COMMISSION OF TEXAS. Circular No. A-2.
"GENERAL ORDER.

"Basis for Dividing Operating Expenses of Railroads
"Between Freight and Passenger Service.

"Austin, Texas, August 13, 1907.
"Under the authority conferred upon it by Article 4571 of the Revised Civil Statutes of 1895 of the State of Texas, wherein this commission is empowered to prescribe a system of bookkeeping to be observed by all railroad companies subject thereto, it is hereby ordered by the Railroad Commission of Texas that the following 'Basis for Dividing Operating Expenses of Railroads Between Freight and Passenger Service,' hereby adopted and promulgated by said commission, shall be observed by all railway companies and receivers operating lines of railway in this State, in the keeping of the accounts and the compiling of the statistics of its business handled on and after July 1, 1907:

"GENERAL RULES.

"Section 1. All cars handled in passenger trains shall be rated as passenger loads.

"Section 2. Five empty freight cars shall be rated as two freight loads.

"Section 3. One passenger load shall be rated as two freight loads, except in mixed trains, when one passenger car shall be rated as one loaded freight car.

"Section 4. All mixed-train mileage shall be divided between freight and passenger on basis of loaded-car miles of each in mixed trains.

"Section 5. Expense of operating non-revenue trains shall be charged on basis prescribed for charging other expenses incident to the particular service in which each non-revenue train is engaged."

The subject of the circular is divided into five general heads, to-wit:

I.     MAINTENANCE OF WAY AND STRUCTURES.
II.    MAINTENANCE OF EQUIPMENT.
III.   TRAFFIC EXPENSES.
IV.    TRANSPORTATION EXPENSES.
V.     GENERAL EXPENSES.

The five general heads were subdivided into one hundred and twenty-three subdivisions.

Words in common use when used by the Legislature in a statute are to be understood as intended to express the sense in which they are ordinarily used. Lewis Const. Stat., 2 Vol., p. 654, Sec. 358.

The railroads contend that Circular A-2 does not prescribe a system of "bookkeeping," as that word is used in the statute, therefore, it becomes important to ascertain the scope of the word "bookkeeping." We have found but one case which defines "bookkeeping," Western Assurance Co. v. Altheimer, 25 S. W., 1069, cited by Judge Jenkins. In that case the court says: " 'Bookkeeping' is defined as 'the art of recording in a systematic manner the transactions of merchants, traders, and other persons engaged in pursuits connected with money; the art of keeping accounts.' " · Webster's, the Century and the Standard dictionaries each give practically the same definition as that used in the case named. Words & Phrases quotes from the case cited the definition of "bookkeeping." The American & English Encyclopedia of Law, Vol. 4, quotes the same definition. In Vol. 5 of Cyc. the same definition of the word is given. The citations show the unanimity of the lexicographers and the compilers of legal definitions. We have no better source from which to ascertain the ordinary use of the word.

In numerous cases wherein the question of compliance with the requirement of a stipulation in a fire insurance policy, to keep a set of books, the courts have practically adopted the same definition, in harmony with the authorities cited.

We conclude that the Legislature intended to give to the Railroad Commission power to prescribe a system (method) for the railroads to follow in keeping accounts of their transactions in the operation of their roads. The word system means method, but whatever system might be adopted, the matters to be entered must be transactions of the railroad companies; that is, the commission might require *fatcs* of the business to be made to appear by one method of bookkeeping or another, but the things required to be recorded must be such facts as constitute "bookkeeping." This order of the commission did not require the railroad companies to record any transactions had or the results thereof; such as the number of passenger cars operated, and the miles run, etc., or the number of freight cars operated with the number of miles, whether loaded or empty; nor does the order require the entering of the cost of superintendence of each; nor to enter like facts with reference to any item of expense. Neither are the railroad companies directed by the circular to distribute or apportion any item of expense according to any known rule of law, business or mathematics, but by arbitrary rules it directs the apportionment to be made upon a purely conjectural basis of "car miles" in the ratio of two-thirds against passenger traffic to one-third against freight. For example, if there be ten thousand car miles and the cost of superintendence be one hundred thousand dollars, the passenger service would be charged with $66,666.66 2/3 and the freight service would be charged with $33,333.33 1/3. There is no rule of law or business that will support that order as a compliance with the statute.

Our conclusions necessarily require the reversal of the judgment

of the Court of Civil Appeals, but it does not follow that we must affirm the judgment of the District Court. It is our opinion that the judge of the District Court gave greater scope to the decision of the issue in this case than was justifiable and might put unreasonable and unnecessary restrictions upon the commission in the exercise of its lawful powers.

We limit our decision to holding that orders prescribing that certain conclusions and deductions be entered upon the books of the railroads were not authorized by the law which empowers the commission to prescribe a system of bookkeeping. It is not the intention of the court to limit the commission's power to make such distribution of the costs, maintenance and earnings of different departments of the service of railroads as may be deemed necessary to a proper adjustment of passenger fares and freight charges.

The circulars attacked by the railroads contain some items which we think might be properly entered upon the books of a railroad company. But the matters are so connected with others that we deem it wise for this court to leave it to the commission to reconstruct its circulars in accordance with this decision, that is, matters to be prescribed for entry on the books of railroad companies must consist of facts and not conclusions, except such as bookkeeping would include. We realize that the work of the commission is important to railroads and people, and we deem it proper to say that it is not intended in this opinion to go beyond the requirements of the facts of this case.

It is ordered that the judgment of the Court of Civil Appeals be reversed, and that judgment be here entered that the different circulars, A-2, A-3, A-4, A-5, and A-6, be set aside and annulled. But this judgment is not to be construed as forbidding the including in subsequent circulars matters which were properly included in said circulars and were proper to be prescribed as "bookkeeping." It is further ordered that the railroads recover fom the commission all costs of this proceeding.

*Reversed, reformed and rendered.*