**RAILROAD COMMISSION OF TEXAS et al.**

v.

**TEXAS & N. O. R. CO.**

No. 10231.

Court of Civil Appeals of Texas.

Austin.

March 24, 1954.

Rehearing Denied April 14, 1954.

John Ben Shepperd, Atty. Gen., Dean J. Capp, Mert Starnes, Asst. Attys. Gen., for Railroad Commission of Texas.

Dies & Anderson, Lufkin, for appellants, Polk County Chamber of Commerce et al.

McKay & Avery, Austin, Tom M. Davis, Baker, Botts, Andrews & Shepherd, Houston, for appellee.

HUGHES, Justice.

Texas and New Orleans Railroad Company brought suit against the Railroad Commission of Texas in the nature of an appeal from an order of the Commission denying its application to discontinue operation of passenger trains Nos. 25 and 26, between Houston and Shreveport.

The Polk County Chamber of Commerce and the Livingston and Corrigan branches thereof, the Nacogdoches County Chamber of Commerce including the communities of Garrison and Appleby, Texas, in Nacogdoches County, the Cleveland Chamber of Commerce of Liberty County, Texas, the Angelina County Chamber of Commerce at Lufkin, Texas, the Timpson Chamber of Commerce of Shelby County, Texas, the City of Diboll, Texas, in Angelina County, the City Council of Tenaha, Shelby County, Texas, and its Mayor, Honorable K. D. Riley, George Anderson, Clyde Edwards, Arnold Betz, Reverend L. A. Jones, Roger Montgomery, T. P. Richardson, B. A. Patterson, Albert Burns and four hundred-four (404) other citizens living along the Houston-Shreveport line of the T. & N. O. Railroad, duly intervened as defendant-intervenors in the trial court, and with the Commission are appellants here.

A nonjury trial resulted in judgment being rendered adverse to the Commission and granting the authority requested by the Railroad.

No findings of fact or conclusions of law were requested of or filed by the trial court.

Appellee operates four passenger trains daily between Houston and Shreveport, two each way. The trains sought to be discontinued are the day trains, No. 25 operating from Shreveport to Houston and No. 26 operating from Houston to Shreveport.

Appellee bases its right to discontinue operation of these trains primarily upon evidence consistent with that portion of Art. 6479, V.A.C.S., which provides that the Commission shall relax the requirement that at least one train carrying passengers shall be run each day, Sundays excepted, if " * * * on any railroad, or part, or portion or branch thereof, passenger service as frequent as one train each day, Sundays excepted, with the passenger traffic offered and reasonably to be expected, does not and will not pay the cost of such service plus a reasonable return upon the property employed in the rendition of such service; * * *."

The order of the Commission here attacked forcefully sets out the views of the Commission which are brought forward in its brief. While we have no doubt but that the complaint of the Commission is of a legislative rather than a judicial nature we, for the convenience of the public and particularly the Legislature, quote from the order, the basis of the Commission's action in this case:

"The problem of the discontinuance of passenger train service is not new to the Commission. Since World War II a great many requestes have been filed before us seeking to discontinue passenger trains. In these hearings the railroads have uniformly failed to introduce evidence of their freight earnings over the line on which they are seeking to discontinue passenger operations. Such was the case in this hearing. Since they have urged and been granted freight rate increases because of alleged losses due to passenger operations; this seems to us an anomaly. We feel that the problems of the railroads of this great state must always be carefully considered by this Commission, but we cannot believe that they should be permitted to 'Eat their cake and have it, too.'

"In this case it is our opinion and we find that the Railroad failed to sustain the burden imposed upon them to take off two passenger trains in that they did not show that the freight revenue was insufficient to meet the defi-

cit caused by the operation of these trains.

"In a recent case, Ex Parte 175, where freight rates were increased 6 per cent. generally, the increase had been protested on behalf of the shippers of certain commodities, and one ground for their protest was that the need for additional revenue was largely due to passenger operating deficits, and that if it were not for such deficits, the need for increase in freight rates would not exist.

"The order of this Commission granting the increases on those commodities along with others was attacked in the District Court in Travis County, Texas, which court upheld the Commission's orders. Appeal was taken to the Court of Civil Appeals, in which briefs have been filed and the case argued.[1] The case of King Versus United States [344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301] granted freight rate increases which included in their reason for the finance docket that they were losing money on the passenger trains, and therefore they had to increase the freight rates.

"It seems only fair in principle that if the Railroads are going to ask for freight rate increases and get them because in part that passenger rates were not producing sufficient revenue and had to be bolstered by revenues from increased freight rates, then certainly this principle should work in reverse; that is, if passenger deficits may be used to justify increases in freight rates in those cases like this one where Railroads seek to discontinue passenger train operations and show a loss from that operation, earnings from freight should also be considered; and if there is an overall earning sufficient for the operations for a reasonable profit, the authority

to discontinue the passenger train might be denied.

"In our opinion, the Railroad cannot consider passenger losses in asking for freight rate increases, and refuse to consider and diverge the freight rates revenue when asking to discontinue a passenger train or trains.

"This case in the Supreme Court of the United States of King Versus United States [344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301] in the October Term, 1952, puts a new light on this matter of discontinuance of passenger trains, and it is also for this reason that we must deny the discontinuance of these two trains, being passenger trains No. 25 and No. 26, between Houston, Texas, and the Louisiana state line near Haslam, Texas."

■ Appellants' first and second points relating to the failure of appellee to take into account freight revenues and increased freight rates in determining its right to discontinue passenger service are overruled. Art. 6479, supra, Texas & New Orleans R. Co. v. Railroad Commission, Tex. Civ.App., Austin, 220 S.W.2d 273, writ ref., and cases therein cited.

The applicable provision of Art. 6479 is plain and unambiguous and the courts have enforced it as written and will, we presume, continue to do so until it is changed by the Legislature.

If by the discontinuance of the operation of the trains in question and the avoidance of losses occasioned thereby reduction in freight rates becomes justifiable the Commission will, no doubt, reduce them.

Appellants' Point Four is to the effect that since the evidence shows that there are other passenger trains operated by appellee which lose more money than the two trains involved here that the Commission

1. Texas Industrial Traffic League v. Railroad Commission, Tex.Civ.App., Austin, 255 S.W.2d 903, writ ref., N.R.E, sustaining the trial court and the Commission.

and not the railroad should have the authority to determine which trains should be discontinued if any are to be discontinued.

■ This contention has no basis in the statute. The statute gives the railroad the right to discontinue passenger train service upon express stated conditions. That appellee may have the right to discontinue other trains does not affect its right to discontinue trains 25 and 26. Whether the Commission has the right of its own motion and over the protest of the railroad to discontinue uneconomical passenger train service is a question not before us.

We need not consider appellants' Point Five because it relates to counterpoints made by appellee for affirmance which are not now material since we are affirming this case upon other grounds.

■ The third and final point to be considered is that the court erred in holding that uneconomical operation of trains Nos. 25 and 26, as measured by Art. 6479, had been established.

The Commission made a specific finding as to this adverse to appellee. We doubt that the Commission intended to make this finding except as connected with and as a part of its ruling that freight revenues should be considered in determining passenger service deficits. The order as a whole so appears; besides the evidence is abundant and leads to no conclusion except that these two trains operate at a loss and that no reasonable basis exists for any improvement in the situation. Since the Commission offered no independent evidence directly refuting this conclusion we do not believe we are required to analyze a statement of facts containing 849 pages and numerous forbidding appearing exhibits.

Mr. E. P. Gaines, Jr., a railroad accountant, who testified in behalf of the Commission, spent nine days in appellee's Houston office examining its records and while he was critical of some of appellee's accounting practices he gave no evidence and expressed no opinion that a change in these practices would alter the profit or loss status of the operation of these trains.

There is other evidence, some of it by way of cross examination of appellee's witnesses, which the Commission takes as a valid basis for condemning or criticizing various accounting practices of the Railroad but there is no practical application of any of these matters to the statutory measure of appellee's right to discontinue these trains. We could discuss, for instance, the merits of allocating the repair costs of a steam locomotive upon a ton-mile basis rather than upon a fuel consumption basis but when we were through and no matter which method we preferred there still would be no finding possible other than that these two trains are losing money. This is also true as to all other alleged faults found with appellee's accounting system.

When we consider that the Commission has almost unlimited power of examining and investigating the business of a railroad including the power to "prescribe a system of bookkeeping to be observed by each railroad * * *"[2] and the fact that its own accountant spent nine days going over the books of appellee without tangible result we are unwilling to set aside the presumed finding of the trial court fully supported by the evidence that those two trains were being operated at a deficit solely upon disputes between accountants as to accounting methods the resolution of which would lead us nowhere.

The Commission in its brief says "We believe that the Railroad system of allocating expenses on these two trains is sufficiently doubtful for the purposes of this case to warrant the Railroad Commission in refusing its application * * *." We are of the opinion that mere doubts upon such technical matters should not be sufficient to rebut the undisputed evidence of appellee.

2. Art. 6468, V.A.C.S.; Texas & Pacific Ry. Co. v. Railroad Commission, 105 Tex. 386, 150 S.W. 878.

All is not lost however to those who may feel aggrieved at this result because the Commission "has continuing jurisdiction to require, if warranted by the facts, a resumption of this service whenever it appears that it is needed and will pay." Texas & N. O. R. Co. v. Railroad Commission, 145 Tex. 541, 200 S.W.2d 626, 630.

The judgment of the trial court is affirmed.