TEXAS AND NEW ORLEANS RAILROAD COMPANY V. RAILROAD COMMISSION OF TEXAS.

No. A-1098. Decided March 12, 1947.
(200 S. W., 2d Series, 626.)

*John P. Bullington, Tom Martin Davis, Cyril J. Smith, John J. McKay, Bernard J. Mackin* and *Baker, Botts, Andrews & Wayne,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that under Article 6479, R. S., as amended, regardless of facts and circumstances, the Railroad Commission is completely powerless to authorize abandonment of passenger train service over a branch line of railroad, which branch is located wholly within the State of Texas, and in overturning a departmental construction of said statute, which construction has been repeatedly applied for over thirteen years. Trawalter v. Schaeffer, 142 Texas 521, 179 S. W. (2d) 765; State v. Standard Oil Co. 130 Texas 313, 107 S.

W. (2d) 550; Shaw v. Strong, 128 Texas 65, 96 S. W. (2d) 276; Buchanan v. Girvin, 142 Texas 134, 176 S. W. (2d) 729.

*Grover Sellers,* former Attorney General, *Price Daniel,* Attorney General, and *James D. Smullen,* Assistant Attorney General, for respondent.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

The Texas and New Orleans Railroad Company sued the Railroad Commission of Texas and its members in a Travis County district court, to set aside a Commission order denying the company's application for leave to discontinue passenger train service on its branch line between Wharton and Palacios. The district court set the order aside and enjoined the Commission from requiring passenger train service on this line so long as either (1) the operation is not necessary in the rendition of adequate service to the public, or (2) the passenger traffic offered and reasonably to be expected does not and will not pay the cost of the service plus a reasonable return upon the property employed in its rendition. Upon an appeal from that judgment, the Court of Civil Appeals construed Article 6479, Revised Statutes, as amended, to mean that the Railroad Commission was without power to allow a discontinuance of passenger train service as sought by the railroad company, the court being of the opinion that the Commission "did not have the authority to authorize complete abandonment thereof." 197 S. W. (2d) 176.

Before 1927, enactments which had been in effect since 1891 required substantially that the Railroad Commission see to it that every railroad should run at least one train a day, Sundays excepted, upon which passengers should be transported, and further, that "the commission shall have no power to relax this provision." Acts 1891, ch. 51, p. 55; Art. 4580, R. S. 1895; Acts 1903, ch. 117, p. 183; Art. 6676, R. S. 1911; Acts 1925, ch. 154, p. 365; Art. 6479, R. S. 1925. These and other statutes (notably Arts 6349, 6357 and 6358, R. S. 1925) had been construed to mean that the Commission had no power to authorize the complete abandonment of a railroad or of train operations over it once the railroad had been located and established. State v. Sugarland Ry. Co. (Tex. Civ. App.), 163 S. W. 1047, error refused. In 1927, however, the legislative policy by which the Railroad Commission had been so strictly enjoined to require a minimum of passenger train service was changed so that the Commission was authorized to "relax" these requirements as to certain short lines whose gross annual passenger revenues were

less than $3,600.00 (Acts 1927, ch. 198, p. 283). A still more sweeping change in legislative policy occurred in 1933 when the act under consideration was amended to include the following provisions:

"It shall be the duty of the Commission to see that upon each railroad in this State carrying passengers for hire there shall be run at least one train each day, Sundays excepted, upon which passengers shall be hauled, provided, however, the Commission may, in its discretion, upon application filed and after notice and hearing, relax such requirement as to any railroad, or part, portion or branch thereof, when in its opinion public convenience permits of such relaxation, and *shall relax such requirement when it appears* upon such hearing that the running of one train each day, Sundays excepted, is not necessary in the rendition of adequate service to the public, *or that on any railroad, or part, or portion or branch thereof, passanger service as frequent as one train each day, Sundays excepted, with the passenger traffic offered and reasonably to be expected, does not and will not pay the cost of such service plus a reasonable return upon the property employed in the rendition of such service; * * *.*" Acts 1933, ch. 111, p. 281. (Emphasis supplied.)

Experience which culminated in the 1927 and 1933 amendments to Article 6479 apparently had demonstrated that the rigid rule under which the Commission could in no case relax the requirement of daily except Sunday passenger service was working to the detriment of both the railroad and the public.

Since the Railroad Commission could grant no relief when heavy and continued losses were incurred from such passenger train service as that under consideration here, many applications were made to the Interstate Commerce Commission, which did have power to grant the relief (Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 70 L. Ed. 878), for authority to abandon altogether nonpaying lines of railroad, and some of those applications had been granted, with a resulting loss to many communities not only of passenger train service but railroad freight service as well. The emergency clause of the 1933 enactment significantly reads:

"Sec. 2. The fact that numerous applications have been made by Texas railroads to the Interstate Commerce Commission for authority to abandon lines of railroad in this State because the earnings of same are materially less than their expenses, some

of which applications have been granted (see footnote) and others of which are still pending before said Commission, and that unless the expenses of other lines of railroad are reduced to amounts not in excess of their earnings, applications for authority to abandon same will probably be made to said Interstate Commerce Commission and granted, whereby numerous communities in this State will be deprived in some cases of all railroad service and in others of competitive railroad service, creates an emergency * * *."

Obviously to avert these imminent abandonments and to preserve for the communities affected at least the advantage of continued rail freight transportation, the legislature sought by its 1933 enactment to give to railroads, as a matter of right, relief from continued deficit operations of intrastate passanger trains. And so the 1933 amendment provided not only that the Commission should have the discretion to relax these requirements in certain situations, but also that where the rendition of daily except Sunday passenger train service did not yield a profit, the Commission *shall relax* the requirement in respect of the rendition of that service.

The Court of Civil Appeals held, as had the trial court, that the railroad company has fully met the burden of showing that the passenger service in question did not and could not reasonably be made to pay within the meaning of the statute. The record shows without dispute that in 1936, because of an operating loss, the Railroad Commission authorized the railroad company to discontinue passenger service between Palacios and Bay City, and in 1938, for the same reason, to discontinue the service on the remainder of the line extending from Bay City to Wharton. In September, 1940, because of increased activities at a military camp at Palacios, the railroad company voluntarily resumed these operations upon a temporary basis. In September, 1942, the company applied for authority to discontinue the service on the ground that it was no longer needed and was being operated at a loss. This application was denied without prejudice.

FOOTNOTE: For example, from May 1931 through April, 1933, the Interstate Commerce Commission authoried abandonment of railroad lines situated in Texas in the following cases: Texas & N. O. R. Co. Abandonment, 175 I. C. C. 613; Galveston, H. & S. A. Ry. Co. Abandonment, 175 I. C. C. 763; San Antonio & A. P. Ry. Co. Abandonment, 180 I. C. C. 119; Galveston, H & S. A. Ry. Co. Abandonment, 184 I. C. C. 122; Sugar Land Ry. Co. Abandonment, 184 I. C. C. 141; Burlington R. I. R. Co. Abandonment, 187 I. C. C. 300; San Antonio S. Ry. Co. Abandonment, 189 I. C. C. 114; San Antonio & A. P. Ry. Co. Abandonment, 189 I. C. C. 137; Houston & T. C. R. Co. Abandonment, 189 I. C. C. 481; St. Louis S. W. Ry. Co. of Texas Abandonment, 189 I. C. C. 659

Subsequently, when it was renewed, the Commission on December 21, 1945, denied it upon the grounds of "public convenience and necessity." This application was urged a third time, and on May 21, 1946, yet again denied, no reason then being assigned by the Commission for its action.

The books of the railroad company, kept in accordance with Interstate Commerce Commission accounting regulations, showed an operating loss of $88,200.00 on this train service between May 17, 1941 and June 30, 1946, of which $8,828.00 was sustained during the first six months of 1946.

■ Thus, by showing that the train service in controversy did not and could not reasonably be made to pay, the railroad company became entitled as a matter of right to some measure of relief at the hands of the Railroad Commission. But not only did the Commission deny the company's request for relief, but it refused in any degree or to any extent to relax the requirement that the company continue these deficit operations. In taking this position the Commission clearly violated the letter as well as the spirit of the 1933 amendment, and its action in this respect was, in legal contemplation, unjust and unreasonable to the complaining company and, so, vulnerable to attack upon a court review. Arts 6453 and 6454, R. S.; Railroad Commission of Texas v. Houston & T. C. R. Co. (Tex. Civ. App.), 40 S. W. 526, 1052, error refused.

■ The meaning of the word *relax* and the other language employed in the amendment under consideration must be gauged in the light of its legislative history, the circumstances obtaining at the time of its passage, and the evils it sought to correct. 39 Tex. Jur. 229 et seq. And whenever the legislative purpose is ascertained, the significance of words used may be restricted or enlarged in order to effectuate that purpose and to give the the act the meaning which the lawmakers manifestly intended. State v. Standard Oil Co., 130 Texas 313, 107 S. W. (2d) 550. Giving effect to these principles, it appears clear that this statute has the import ascribed to it by the district court. It would virtually empty the legislation of meaning for a railroad company, as in this case, to demonstrate to the Commission indisputably that certain intrastate passenger train services are losing heavily and still be denied any measure of relaxation of the Commission requirement that these onerous operations be continued.

Indeed, this is the interpretation which the Attorney General

and the Railroad Commission originally gave to the 1933 act. Shortly after the amendment became effective, the Commission requested the Attorney General for an opinion as to whether it was compelled by the enactment to grant "authority to railway companies making applications for such relief to discontinue passenger train service" when the evidence demonstrated "that on any railroad, or part, or portion or branch thereof, passenger service as frequent as one train each day, Sundays excepted, with the passenger traffic offered and reasonably to be expected, does not and will not pay the cost of such service plus a reasonable return upon the property employed in the rendition of such service."

The Attorney General's opinion, in response to this Commission inquiry, reads in part:

"The obvious purpose of this legislative act was to remove from the statutes an arbitrary requirement of minimum service which has, within recent years, proven in many instances to impose an unreasonable burden upon railways. The Legislature has, by this means, vested the Commission with the discretion and power, by proper orders, of removing these illegal burdens. * * *

"It is my judgment that should the Commission determine, after hearing, that existing train service requirements were resulting in a loss to a railway and should, nevertheless, refuse to relax such service requirements, that such refusal on the part of the Commission would be against the plain provisions of the act in question." (Opinions of the Attorney General, Book 350, p. 412.)

In conformity with the Attorney General's opinion, as has been observed, the Commission authorized the railroad company in 1936 and 1938 to discontinue the very passenger train service now in question. Moreover, it appears without dispute that after the 1933 amendment went into effect the Railroad Commission had granted other applications to discontinue intrastate passenger train service upon a showing that it was being rendered at a loss.

Were the legislative intent not so plainly apparent, this contemporaneous construction of the act by the Railroad Commission, which was charged with the duty of its enforcement, would be worthy of serious consideration as an aid to interpretation, and particularly so here, where that construction appears to have been sanctioned by long acquiesence. 39 Tex. Jur. 234 et

seq.; 42 Am. Jur., Public Administrative Law, sec. 78. But resort to those aids to construction is not required in this situation where the meaning of the statute is so manifest.

The direction in the 1933 amendment to the effect that in given situations the Railroad Commission *shall relax* the requirement of minimum passenger train service no doubt vested in the Commission a discretion as to the degree of relaxation required to stop the operating loss. Conceivably, although somewhat difficult to imagine, there might be cases where passenger trains might operate less often than daily and upon such a reduced schedule yield an operating profit. But no such a situation is presented here. Indeed, in the district court the railroad company offered proof that a reduced service would not stop the loss, but this evidence was stricken on motion of the Railroad Commission. Accordingly, the only measure of relaxation presented in this record which would afford the relief to which the railroad company was entitled was a cessation of the deficit operation of these trains until development warrant the conclusion that a resumption of the operations either upon a daily except Sunday or other basis would both be necessary in the rendition of an adequate public service and would pay within the meaning of the statute. And the Railroad Commission indubitably has continuing jurisdiction to require, if warranted by the facts, a resumption of this service whenever it appears that it is needed and will pay.

It is not thought accurrate to say that what the company sought was a complete abandonment of the train service in controversy. The cessation of operations sought was not an utter and final abandonment of the service. Rather, it was relief of a contingent and transitory nature dependent upon changing conditions, as we have been at pains to show.

The other points presented by the Commission were properly disposed of by the Court of Civil Appeals and accordingly will not be noticed at length.

The judgment of the Court of Civil Appeals is reversed and that of the district court affirmed.

Opinion delivered March 12, 1947.