Robert S. CALVERT, Comptroller of Public
Accounts, Petitioner,

v.

The BRITISH–AMERICAN OIL PRODUC-
ING COMPANY, Respondent.

No. A–10782.

Supreme Court of Texas.

Nov. 17, 1965.

Rehearing Denied Jan. 26, 1966.

Waggoner Carr, Atty. Gen., Austin, H.
Grady Chandler, Asst. Atty. Gen., for peti-
tioner.

Clark, Thomas, Harris, Denius & Win-
ters, Austin, Jack Corman, Dallas, Ful-

bright, Crooker, Freeman, Bates & Jaworski, Jay W. Elston, Houston, Lewis L. Williams, Dallas, for respondent.

SMITH, Justice.

This is a suit filed by British-American Oil Producing Company, plaintiff, in the District Court of Travis County, Texas, against Robert S. Calvert, State Comptroller of Public Accounts, defendant, for a refund of $3,866.79 sales tax paid under protest. Plaintiff and defendant both moved for summary judgment in the trial court. Plaintiff's motion was granted and the defendant's motion was denied. The Court of Civil Appeals has affirmed the judgment of the trial court. 390 S.W.2d 305. We reverse the judgments of the trial court and the Court of Civil Appeals and render judgment that plaintiff take nothing by its suit.

The defendant claims that the plaintiff is liable for the tax under Article 20.02 et seq., Chapter 20, Title 122a, adopted by the Legislature and effective September 1, 1961, V.A.T.S. Article 20.02 imposes upon each separate sale at retail a "limited sales tax at the rate of two per cent (2%) of the sale price of each item or article of tangible personal property when sold at retail in this State." The plaintiff is liable for the tax under this Article unless exempt under Article 20.04(H) [1] of the Act. Since the transaction involved was in no sense a "bid," the portion of Article 20.04(H) applicable here is:

"(H) * * * There are exempted from the taxes imposed by this Chapter the *receipts* from the sale, use or rental of, and the storage, use or other consumption in this State of, tangible personal property (i) *used* for the performance of a written contract entered into prior to the effective date of this Chapter * * *." [Emphasis added.]

The facts are undisputed. The contract involved is in writing. On July 26, 1961, the plaintiff entered into a contract with International Business Machines Corporation, as "seller," for the purchase and sale of three IBM machines. At the time of delivery of the machines an exemption certificate was issued by plaintiff to IBM, the seller, claiming an exemption for this transaction from the Act under the provisions of Section (H), Article 20.04, supra.

Plaintiff and defendant stipulated in the trial court in connection with their motions for summary judgment that:

"1. Plaintiff, * * * after November 16, 1961, the date of the installation and delivery of the computer machines which is the subject of the contract in issue in this case has *used* said computer machines in the accounting procedures in the conduct of its business.

1. Art. 20.04 "(H) Written Contracts and Bids Executed Prior to the Effective Date of this Chapter. There are exempted from the taxes imposed by this Chapter the receipts from the sale, use or rental of, and the storage, use or other consumption in this State of, tangible personal property (i) used for the performance of a written contract entered into prior to September 1, 1961, or (ii) pursuant to the obligation of a bid or bids submitted prior to September 1, 1961, which bid or bids could not be altered or withdrawn on or after that date and which bid or bids and contract entered into pursuant thereto are at a fixed price not subject to change or modification by reason of a tax imposed by this Chapter. The exemption provided by this Section shall have no effect on the receipts from the sale, use or rental of, and the storage, use or other consumption of tangible personal property in this State after August 31, 1964, and the same will be taxable if it is not otherwise exempt.

"Provided, however, that notice of such contract or bid by reason of which an exclusion is claimed under this Section (H) must be given by the taxpayer to the Comptroller on or before the lapse of one hundred and twenty (120) days from August 16, 1961."

"2. After installation and delivery of the computer machines, * * * Plaintiff *did not use* the same in connection with any written contract entered into by Plaintiff with any person, firm or corporation prior to September 1, 1961, *other than the contract which is the subject of this suit."* [Emphasis added.]

Plaintiff attached affidavits in support of its motion for summary judgment. The motion alleged that the affidavits together with the contract between it and IBM and other exhibits attached, when used in connection with the plaintiff's petition, establish that there is no genuine issue as to any material fact and that the plaintiff is entitled as a matter of law to a refund of the tax imposed and paid under protest. D. W. Holder, plaintiff's agent, made an affidavit in support of plaintiff's motion for summary judgment stating that on July 26, 1961, plaintiff entered into the written contract with "IBM" for the purchase of the machines described in the contract, and that such tangible personal property, according to the terms of the contract, was used by IBM "* * * *for its performance of said written contract* * * *."* The affidavit further alleged:

"In *performance of the obligation imposed upon IBM* by said contract, IBM delivered and installed the tangible personal property as called for in said contract at plaintiff's Dallas, Texas office, completing such installation on November 16, 1961." [Emphasis added.]

The contract reflects that the total purchase price of the machines was $164,-450.00. The contract provides that the agreement shall be governed by the laws of the State of New York. The prices fixed in the contract were F.O.B. IBM plant. The contract contains a provision that any taxes "* * * however designated, levied or based on such prices or on this Agreement or the machines, including state and local privilege or excise taxes based on gross revenue, and any taxes or amounts in lieu thereof paid or payable by IBM * * *" shall be added to the prices set out in the contract.

The defendant has consistently contended as reflected in his notice of disallowance of the claim for refund, in his reply to plaintiff's motion for summary judgment and in his motion for summary judgment, that the tax was due and payable for the reason that the *taxpayer* used the "computer system" in a manner other than for the performance of a written contract. The notice of disallowance of the claim recites that the "* * * contract was entered into prior to September 1, 1961, but the contract was performed in full on the date of delivery. In accordance with Attorney General's opinion No. C–30 and Sales Tax Ruling No. 2, the later use of the computer system was a taxable use and is subject to the use tax imposed by Article 20.03 of the Limited Sales, Excise and Use Tax Act."

The defendant, in his reply to the plaintiff's motion for summary judgment, states that the provisions of the Act relied upon by the plaintiff to support its claim for an exemption, "* * * do not apply to a mere contract of sale between the seller and purchaser of tangible personal property, but apply only to *another written contract entered into by the purchaser* and the tangible personal property purchased is to be used to perform such other contract as provided * * *" in the exemption statute, Article 20.04(H), supra.

Defendant's motion for summary judgment, after adopting his answer to plaintiff's motion for summary judgment, additionally alleges that the "* * * contract does not provide for any 'use' of the three machines by any party and only provides that they shall be delivered and installed by IBM in order to complete the terms of the contract of sale."

Thus, the record before this Court presents the single question of law as to wheth-

er the written contract of sale and purchase between IBM and the plaintiff is such a contract as required by the exemption statute, Article 20.04(H). If so, the exemption must be allowed. However, we agree with the defendant's contention that the exemption statute does not exempt the written contract of sale involved. The parties cite no decisions by the courts in this or any other jurisdiction to support their respective contentions. Our research has failed to discover any court decisions bearing on the question. There are two opinions of our Texas Attorney General. The plaintiff contends that the first opinion reached by the Attorney General should be controlling. That opinion, Number WW-1489, dated December 6, 1962, holds that " * * * paragraph (H) of Article 20.04, * * * exempts both the seller and purchaser or consumer from all the taxes imposed * * * when tangible personal property is sold pursuant to a written contract entered into prior to September 1, 1961, * * *." The opinion seems to support the plaintiff's position. However, at the request of the State Comptroller the Attorney General reviewed the conclusions reached in Attorney General's opinion No. WW-1489 and overruled such conclusions in opinion No. C-30, dated March 6, 1963, and held that the exemption provisions did not apply to a mere contract of sale of tangible personal property and only applied to a contract made by the purchaser to be used for the performance of a contract. This opinion is now being followed by the defendant.

 Since there are no reported cases construing The Texas Limited Sales, Excise and Use Tax Act and the exemption provisions of paragraph (H), supra, we resort to the rules of statutory construction applicable to taxation statutes. Article 10, Vernon's Annotated Civil Statutes, provides general rules for construing all civil statutory enactments. The Article provides that the provisions of statutes shall be liberally construed with a view to effect their objects. The courts necessarily look diligently for the intention of the Legislature as the intention of the Legislature is the dominant consideration in construing a statute. See State v. Dyer, 145 Tex. 586, 200 S.W.2d 813 (1947); McInery v. City of Galveston, 58 Tex. 334 (1883); City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951). In Edwards v. Morton, 92 Tex. 152, 153, 46 S.W. 792, 793 (1898), where the strict letter of a statute was not followed, the Court said:

"The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the legislature, and to conclusions inconsistent with the general purpose of the act. * * *"

The Edwards case was quoted with approval in State v. Dyer, supra. This Court announced the same rule in City of Mason v. West Texas Utilities Company, supra, and this latter case announced and reaffirmed the well-settled rule that the intention of the Legislature should be ascertained from the entire act and not from isolated portions thereof. In the case of Texas & N. O. R. Co. v. Railroad Commission, 145 Tex. 541, 200 S.W.2d 626, 629 (1947), this Court in construing the legislative act involved in that case, said that " * * * whenever the legislative purpose is ascertained, the significance of words used may be restricted or enlarged in order to effectuate that purpose and to give the act the meaning which the lawmakers manifestly intended. * * *" Where the intent is apparent from the words of the statute as is undoubtedly the case with regard to the words of paragraph (H), supra, it is not necessary for this Court to make an analysis of the extrinsic evidence of legislative intent.

 By applying these rules of statutory construction and by giving effect to each sentence, clause, phrase and word of ex-

emption (H), the conclusion is inescapable that while the exemption statute does not specifically state *who* is to *use* the property to perform a prior written contract in order to secure an exemption, it is clear that it is the *use* after the contract of sale has been completed; and, therefore, the property must be *used* by the purchaser to fulfill a previously executed contract. Mere performance of a contract of sale by delivery of this property by the seller to the purchaser is not sufficient. The exemption statute provides that the "receipts from the sale" are exempt when the *sold* property is *used* " * * * for the performance of a written contract entered into before the effective date of the act." The statute also provides that the purchaser, not the seller, must execute the exemption certificate called for in the statute. This for the reason that it is the purchaser who must use the personal property in fulfillment of a contract to which he is bound. It should be noted that the second paragraph of Article 20.04, as originally enacted in 1961, provides that " * * * [i]f a *purchaser* certifies in writing to a seller that the tangible personal property purchased will *be used* in a manner or *for a purpose* entitling the seller to regard the receipts from the sale as exempted by this Chapter from the computation of the amount of the limited sales tax, and if *the purchaser then uses* the tangible personal property in some other manner or for some *other purpose,* the *purchaser* shall be liable for payment of the limited sales tax * * *." [Emphasis added.] The plaintiff, apparently recognizing that it as purchaser must execute the certificate and that it must use the property " * * * in a manner or for a purpose * * *," actually executed an exemption certificate in which it stated that " * * * [t]he reason the said purchaser is claiming this exemption is that Paragraph (H) of Article 20.04 of said Chapter exempts from tax tangible personal property used for the performance of a written contract entered into prior to the effective date of the Act." Article 20.04(H) further

provides that the taxpayer (purchaser) is to give the State Comptroller notice of the contract in order to secure the exemption.

■ We are constrained to hold that under the plain terms of the Act the plaintiff was liable to pay to IBM the tax involved in this suit. Plaintiff was the purchaser. It is clear that the exemption statute means that the written contract therein referred to must be one between the purchaser and a third party and not between the seller and the purchaser. While plaintiff's certificate does not state *who* was to use the property in the performance of a written contract, the plaintiff in its affidavit in support of its motion for summary judgment makes it clear that IBM, the seller, only used the property. The exemption certificate was issued after the three IBM machines were installed on November 16, 1961. Evidently, upon delivery and installation thereof, IBM no longer had any power or authority to use the machines. The written contract between IBM and the plaintiff provides that IBM was to install the machines and notify the plaintiff when they were ready for use. Since the record clearly shows that the plaintiff did not use the machines for the performance of a contract entered into with a third party prior to September 1, 1961, the effective date of the Act, the plaintiff's claim for a refund of the taxes paid under protest must fail. Since the defendant has presented a summary judgment record clearly showing that plaintiff's pleadings do not disclose the *use* to which the machines were going to be *used* as required by Article 20.04(H), supra; that the plaintiff's motion for summary judgment and affidavits in support thereof clearly show the machines were only used by IBM to complete the sale to plaintiff and, since the stipulation entered into by the parties upon the trial of this case shows that plaintiff was only to use " * * * said computer machines in its accounting procedures in the conduct of its business * * *," the plaintiff's motion for summary judgment should have been

denied and that of the defendant should have been granted.

Accordingly, we reverse the judgments of both the trial court and the Court of Civil Appeals and judgment is now rendered that the plaintiff take nothing by its suit, and that the defendant recover from the plaintiff all costs expended.

GRIFFIN, WALKER and POPE, JJ., dissenting.

POPE, Justice (dissenting).

The majority has overworked the word "used", as employed by Article 20.04 V.T.C.S., and has achieved a very complex meaning from a simple sentence. The Legislature, as would be expected when it enacted a new law, stated the time that certain transactions would fall within and be taxable under the statute. It did this by stating in Article 20.04 V.T.C.S., that two kinds of transactions would be exempt.

"*Article 20.04(H):* Written Contracts And Bids Executed Prior To The Effective Date of This Chapter. There are exempted from the taxes imposed by this Chapter the receipts from the sale, use or rental of, and the storage, use or other consumption in this State of, tangible personal property (i) used for the performance of a written contract entered into prior to the effective date of this Chapter or (ii) pursuant to the obligation of a bid or bids submitted prior to the effective date of this Chapter which bid or bids could not be altered or withdrawn on or after that date and which bid or bids and contract entered into pursuant thereto are at a fixed price not subject to change or modification by reason of a tax imposed by this Chapter.

"Provided, however, that notice of such contract or bid by reason of which an exclusion is claimed under this paragraph (H) must be given by the taxpayer to the Comptroller on or before the lapse of one hundred and twenty (120) days from the date of passage of this Chapter."

Even without such a provision, there would be a question whether a transaction that antedated September 1, 1961, the effective date of the new law, would fall within the taxing provisions. To avoid such a question, the quoted statute exempted.

"* * * the receipts from the sale * * * of * * * personal property (i) used for the performance of a written contract entered into prior to the effective date of this Chapter * * *."

There were receipts from the sale by IBM to British-American. The receipts came from the sale of personal property, three IBM machines. The machines were used for the performance of the written contract. The contract was in writing. It was made before the effective date of the law. Under the ordinary understanding of these words, the transaction was exempt from the tax. "When we abandon the plain meaning of words, statutory construction rests upon insecure and obscure foundations at best." State Board of Insurance v. Betts, 158 Tex. 612, 315 S.W.2d 279, 281 (1958).

This ordinary meaning is confused by two errors. The first arises from the unnecessary mixing of the meaning of the two exemption provisions in Article 20.04. The article mentions two kinds of transactions which are exempt, but they are not the same kind of transactions except that both must occur prior to the effective date of the new tax. The word "or" separates them. In fact it appears that the two exemptions follow in logical sequence. The first exemption concerns a first or original sale and the other concerns even second sales provided a bid was made prior to the effective date of the law. The article means that, applied to this case, the written contract between IBM and British-American evidenced the first sale and was ex-

empt. It means that even a second sale would also have been exempt, if British-American had, prior to the effective date of the law, made a bid to furnish the same machines to a third person. The majority has held that in such a situation, the first sale would be taxable but the second one would be exempt. I find it difficult to understand the legislative purpose for taxing the first sale, but exempting a second sale, though both were made before the effective date of the law.

The other error arises when we unnecessarily import the meaning of the carefully and artfully defined word, "use," into provisions which employ the ordinary word, "used." "Use" is defined as follows:

"Article 20.01(R). Use. 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that tangible personal property except that it does not include the sale of that tangible personal property in the regular course of business."

"Used" is not defined. It appears some twenty times in the statutes and, in context, does not have a statutorily defined meaning. It means employed. It is impossible to adopt the statutory definition of "use," give it a past-tense meaning, and come out with a sensible meaning of "used." It makes sense to speak of a "use tax"; but not of a "used tax." The awkward results we would reach by incorporating the statutorily defined "use" into provisions of the same article that employ the word "used" is seen when we try to do so with such provisions as:

"Art. 20.04. 'Exempted from taxes imposed by this Chapter,' as *used* herein, means exempted from the computation of the amount of the taxes imposed." (Emphasis added).

"Art. 20.03(B). 'Retailer engaged in business in this State' as *used* in this Section (B) and the preceding Section (A) means annd includes any of the

following: * * *." (Emphasis added).

"Art. 20.04(C) (3). As *used* in this Article, the term 'returnable containers' means containers of a kind customarily returned by the buyer of the contents for re-use." (Emphasis added).

The majority reasons that Article 20.04 (H) contemplated a sale by the original purchaser to a third person because the article exempted "the receipts from the sale * * *." It argues that this means that the original purchaser must be the one who obtains "receipts" from a sale. This is not supported by the Limited Sales Tax law. The tax in all instances is on the receipts of the seller though it is paid by the purchaser. Article 20.01(D) provides:

" 'Receipts' means the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise, without any deduction on account of any of the following * * *."

Article 20.02 provides:

"There is hereby imposed a limited sales tax at the rate of two per cent (2%) on the receipts from the sale at retail of all tangible personal property within this State."

Article 20.021(A), provides:

"Every retailer shall add the sales tax imposed by Article 20.02 of this Chapter to his sale price and when added the tax shall constitute a part of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price."

The majority opinion also reasons that the IBM machines which were the subject of the sale were used by IBM, the seller, but not by the buyer. It occurs to me that the subject matter of a sale is used by both

the seller and buyer to consummate the sale. Bristish-American, as purchaser used it "for the performance of a written contract" no less than did the seller. The purchaser was obligated by his written contract to accept the subject matter of the contract no less than the seller was to deliver it. The same subject matter was essential both to the performance of seller's and the purchaser's obligations. 50 Tex. Jur.2d Sales, Sec. 1.

In my opinion the transaction occurred before the effective date of the new law and was within the exemption. I would affirm the judgments of the courts below.

GRIFFIN and WALKER, JJ., join in this dissent.

GREENHILL, J., joins in this dissent on motion for rehearing.