COMMISSIONERS COURT OF LUBBOCK COUNTY, Texas, Appellant,

v.

The Honorable Crawford C. MARTIN, Attorney General of the State of Texas, et al., Appellees.

No. 8161.

Court of Civil Appeals of Texas, Amarillo.

Aug. 30, 1971.

Rehearing Denied Sept. 27, 1971.

Brock, Waters & Galey, Ralph Brock, Lubbock, for appellant.

Crawford C. Martin, Atty. Gen., Jack Sparks, Austin C. Bray, Jr., Asst. Attys. Gen., Austin, for appellees.

REYNOLDS, Justice.

This appeal results from the trial court's declaratory judgment decreeing that Section 10 of Article 42.12, the Adult Probation and Parole Law, of the Vernon's Ann. Texas Code of Criminal Procedure is constitutional, and that the actions of the defendant district judges, acting under the Texas Attorney General's interpretation of Section 10, were within their proper powers. The judgment of the trial court, as modified in this opinion, is affirmed.

In 1965, the 59th Legislature undertook a plenary revision of the Texas Code of Criminal Procedure and in the final version expanded the then existing adult probation law through the enactment of Article 42.12 as the Adult Probation and Parole Law. Among the provisions of Art. 42.12 is Sec. 10, reading in part, as amended in 1967, as follows:

"Sec. 10. For the purpose of providing adequate probation services, the district judge or district judges having original jurisdiction of criminal actions in the county or counties, if applicable, are authorized, *with the advice and consent of the commissioners court as hereinafter provided,*[1] to employ and designate the titles and fix the salaries of probation officers, and such administrative, supervisory, stenographic, clerical, and other personnel as may be necessary to conduct presentence investigations, supervise and rehabilitate probationers, and enforce the terms and conditions of probation. * * *"[2]

1. All italics used in this opinion are ours unless otherwise indicated.

2. The remaining portion of Sec. 10 is as follows: " * * * Only those persons who have successfully completed education in an accredited college or university and two years full time paid employment in responsible probation or correctional work with juveniles or adults, social welfare work, teaching or personnel work; or persons who are licensed attorneys with experience in criminal law; or persons who are serving in such capacities at the time of the passage of this Article and who are not otherwise disqualified by Section 31 of this Article, shall be eligible for appointment as probation officer; providing that additional experience in any of the above work categories may be substituted year for year for the required college education, with a maximum substitution of two years. Provided, however, that in a county having a population of less than 50,000, according to the last preceding Federal census, any person having completed at least two years education in an accredited college or university will be eligible for appointment.

"It is the further intent of this Article that the caseload of each probation officer not substantially exceed seventy-five probationers.

"Where more than one probation officer is required, the *judge* or judges shall appoint a chief adult probation officer or director, who, with their approval, shall appoint a sufficient number of assistants and other employees to carry on the professional, clerical, and other work of the court.

"The judge or judges, with the approval of the juvenile board of the county, may authorize the chief probation or chief juvenile officer to establish a separate division of adult probation and appoint adult probation officers and such other personnel as required. It is the further intent of this Act that the same person serving as a probation officer for juveniles shall not be required to serve as a probation officer for adults and vice-versa.

"The judge or judges may, with the approval of the director of parole supervision, designate a parole officer or supervisor employed by the Division of Parole Supervision as a probation officer for the county or district.

"Probation officers shall be furnished transportation, or alternatively, shall be entitled to an automobile allowance for use of personal automobile on official business, under the same terms and conditions as is provided for sheriffs.

"The salaries of personnel, and other expenses essential to the adequate supervision of probationers, shall be paid from the funds of the county or counties comprising the judicial district or geographical area served by such probation officers. In instances where a district court has jurisdiction in two or more counties, the total expenses of such pro-

There existed in Lubbock County, under the provisions of Art. 42.12, an adult probation office, the personnel of which had been appointed, and their salaries set, by the four district judges having jurisdiction over Lubbock County with the approval of the Lubbock County Commissioners Court. On May 13, 1969, the Attorney General of Texas issued Opinion No. M–393 construing Sec. 10, and concluding that the phrase "with the advice and consent of the commissioners court" contained in the section was superfluous and must be disregarded, and that as a result the approval of the commissioners court was not required. Thereafter, on July 31, 1969, pursuant to that opinion, the four district judges of Lubbock County, three of whose districts are co-extensive with the boundaries of Lubbock County and one whose district includes both Lubbock and Crosby Counties, entered their order increasing some probation personnel salaries, appointing additional probation personnel, fixing the salaries of such appointees, and directing the Commissioners Court of Lubbock County to purchase and furnish additional furniture and equipment for the adult probation office. Apparently the expenditures called for in the order were made by the Lubbock County Commissioners Court. Thereafter, during the summer of 1970 when the Lubbock County budget for the following calendar year was being prepared, a controversy arose between the four district judges and the Lubbock County Commissioners Court as to who had the authority to determine the probation personnel and to fix their salaries and the expenses of the probation office.

The Commissioners Court of Lubbock County, appellant here, then brought this action pursuant to the Texas Uniform Declaratory Judgment Act [3] against the Attorney General of Texas and the four judges of the judicial district courts of Lubbock County, who are the appellees here. The suit sought a declaration that Sec. 10 of Art. 42.12 is unconstitutional insofar as that section provides for the appointment and fixing of compensation of probation personnel, and for a construction of said section. Defendant-appellees were served and answered.

After a hearing, the trial court entered its judgment declaring that Sec. 10 is constitutional; that pursuant to that authority the defendant district judges may appoint and fix the compensation of probation personnel and the expenses of the office without the advice and consent of the commissioners court of either or both Lubbock and Crosby County; that in the absence of a constitutional prohibition the judges have the inherent power to provide for an adult probation office and fix expenditures therefor without approval of the Commissioners Court of Lubbock or Crosby County or any non-judicial agency of the government; that in any proceeding wherein the reasonableness and necessity of the actions of the defendant judges is put in issue, the burden of proof shall be on the commissioners court; and that the reasonable and necessary salaries and expenses of the

bation services shall be distributed approximately in the same proportion as the population in each county bears to the total population of all those counties, according to the last preceding or any future Federal Census. In all the instances of the employment of probation officers, the responsible judges and county commissioners are authorized to accept grants or gifts from other political subdivisions of the state or associations and foundations, for the sole purpose of financing adequate and effective probationary programs in the various parts of the

state. For the purposes of this Act, the municipalities of this state are specifically authorized to grant and allocate such sums of money as their respective governing bodies may approve to their appropriate county governments for the support and maintenance of effective probationary programs. All grants, gifts, and allocations of the character and purpose described in this section shall be handled and accounted for separately from other public funds of the county."

3. Vernon's Ann.Civ.St. art. 2524–1.

adult probation office when fixed by the defendant district judges shall be paid prorata by the Commissioners Courts of Lubbock and Crosby Counties.

At appellant's request, the trial judge made and filed findings of fact and conclusions of law. In addition to the findings of fact supporting the recitations in the judgment, other findings were that the probation officers employed handled more than twice the number of probation cases specified by Sec. 10 to be supervised by each officer, and that appellant had appropriated and set side in a special fund the increased amount of expenditures required by the judge's budget request for 1971 without the necessity of any increase in the valuation or ad valorem tax rate of Lubbock County. Moreover, the conclusions of law expressed in addition to those set out in the judgment were that the defendant district judges are limited by standards of reasonableness and necessity, and that the commissioners court has a ministerial duty, subject to the standards of reasonableness and necessity, to approve and appropriate sufficient funds for the probation office as requested by the judges.

From this declaratory judgment, appellant has perfected its appeal on eight points of error. Inasmuch as the assignments pertain to the constitutionality of Sec. 10 and the construction thereof, the points will be discussed generally rather than seriatim. It was in the trial court and is here appellant's position that Sec. 10 is unconstitutional as being violative of the Texas Constitution and the United States Constitution because the power to fix salaries, with a resultant levy of taxes to pay them, is a power constitutionally reserved to, and that may not be delegated by, the Legislature. If Sec. 10 is constitutional, appellant alternatively contended and still contends that the appointment and compensation of probation personnel and expenses of the office must be with the advice and consent of, and the final decision exclusively resting with, the commissioners court. Appellees' position in the trial court was and is here that Sec. 10 is constitutional, and that the judges have the exclusive authority to appoint probation personnel and to fix their compensation, and the expenses of the office, without the advice and consent of the commissioners court, which has a mandatory ministerial duty to approve such actions. Appellees further contended and still contend that in any event district court judges have the inherent constitutional and statutory power to establish and staff a probation office, within reasonable standards, and to require appropriation and payment therefor by the commissioners courts within the judicial districts. In reply, appellant asserted and continues to assert that there is a constitutional denial of such claimed inherent powers.

With respect to its claim that Sec. 10 of the statute is unconstitutional, appellant argues that since Art. 2, Sec. 1, of the Texas Constitution, Vernon's Ann.St., provides for the separation of government into three departments—legislative, executive, and judicial—neither of which shall exercise any power properly attached to either of the others, and since Art. 3, Sec. 44, gives the power to fix salaries to the Legislature, which has power to levy taxes, the delegation of authority to the judiciary under Sec. 10 to fix salaries and indirectly levy taxes to pay them is constitutionally impermissive. Moreover, it is contended that Sec. 10 does not provide sufficient standards, particularly with respect to the minimum or maximum salaries or number of probation employees, to be a proper delegation of authority.

Neither the constitutionality of Sec. 10, nor the construction thereof, heretofore has been before or decided by the courts of this State; consequently, we must rely on the general principles applicable to constitutional construction in determining the correctness of the respective positions of the parties. The rules are fairly well settled, so that the ultimate decision becomes one of application to particular facts.

The rule initially applied is that every possible presumption obtains in favor of the constitutionality of a statute until the contrary is shown beyond a reasonable doubt, and, if a statute is susceptible of construction which would render it constitutional or unconstitutional, it is the court's duty to give it the construction that sustains its validity. State v. Hogg, 123 Tex. 568, 70 S.W.2d 699, 72 S.W.2d 593 (1934). One of the settled maxims in constitutional law is that the legislature must declare the policy of the law and fix the legal principles which are to control, but may invest a delegated authority with the power to ascertain the facts and conditions to which the policy and principles apply. Cooley on Constitutional Limitations (Eighth Edition), Vol. 1, pp. 229–230.

The legislative right to make the laws carries with it the correlative right to create offices and prescribe their duties, but not a relative right to appoint to office —a right that belongs to the locality. Ex parte Lewis, 45 Tex.Crim. 1, 73 S.W. 811 (1903). So long as the statute is complete to accomplish the regulation of particular matters falling within the legislature's jurisdiction, matters of detail reasonably necessary for the ultimate application, operation and enforcement of the law may be expressly delegated to the authority charged with administration. 6 Ruling Case Law, pp. 165–166, § 166; pp. 177–179, § 178. This tenet is particularly applicable where the legislature itself cannot practically and efficiently exercise the powers permissibly delegated. Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927). The test is whether the legislature has prescribed sufficient standards to guide the discretion conferred. Moody v. City of University Park, 278 S.W.2d 912 (Tex.Civ.App. —Dallas 1955, writ ref'd n. r. e.).

It is apparent that when Sec. 44 of Art. 3 of our Constitution specifies that "The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, * * *", the duty of providing for compensation by law—in this case, the compensation of probation personnel—rests solely with the Legislature; but it is also as apparent that there is no constitutional mandate that the specific amount, or the minimum or maximum limits, be enumerated in the law. That the fixing of the exact sum of compensation is a constitutional delegable right was established by our Supreme Court as early as 1911 in the case of Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519, and reiterated by both the majority and dissenting opinions in Dallas County v. Lively, 106 Tex. 364, 167 S.W. 219 (1914), and has not been modified since then. The principle that Sec. 44 does not prevent the Legislature from empowering other authority to determine salaries was followed in Burkhart v. Brazos River Harbor Nav. Dist. of Brazoria County, 42 S.W.2d 96 (Tex.Civ.App. —Galveston 1931, no writ), and in Wichita County v. Griffin, 284 S.W.2d 253 (Tex. Civ.App.—Fort Worth 1955, writ ref'd n. r. e.). Since the probation needs and services in the various judicial districts of Texas, ranging from multi-judicial districts within a single county to one judicial district embracing as many as six counties, are of such character that the compensation and probation personnel must vary in the different districts, the Legislature wisely left the setting of the compensation and the number of personnel to the local authority. Dallas County v. Lively, supra.

The fixing of the amount of compensation of probation personnel is not within itself the levy of a tax to pay the same. The taxing power is a legislative power, and admittedly may be delegated to municipal corporations or corporate bodies, Kinney v. Zimpleman, 36 Tex. 554 (1871–72), which include commissioners courts, the local authority responsible for fiscal administration and charged by Art. 42.12 with paying the designated probation salaries and expenses. The record in the instant case is conclusive that the probation budget set by the defendant district judges did not

in itself result in the levy of an additional tax.

Reference to Sec. 10 reveals that explicit standards for the desired number of probation officers, their qualifications and the source of funds for probation administration are established. It would be impractical, if not impossible, for the Legislature, which meets in regular session for not longer than 140 days every two years in the odd-numbered years, Tex.Const. Art. 3, Sec. 5; Art. 3, Sec. 24, to specify with any degree of efficiency, even disregarding the need for constant revision due to fluctuating factors, the salary schedules and details of each probation office within the State. It is only by the permissible delegation to the judiciary of the authority necessary to effectuate the probation program established under sufficient standards that the Legislature is able to enact a law that is necessary to the proper administration of justice.

Thus, tested by controlling constitutional construction criteria, we conclude, as did the trial court, that Sec. 10 of Art. 42.12 is constitutional when examined in relation to the attacks made by appellant.

This conclusion then leads us to consideration of the issue of which authority—the district judge(s) or the commissioners court(s), or both—shall appoint and fix the compensation of the probation office personnel, which, in turn, necessitates a determination of the meaning of the statutory phrase "with the advice and consent of the commissioners court as hereinafter provided." A perusal of Sec. 10 in its entirety reveals that there is no further elaboration whatsoever, either in that section or in the residuum of Art. 42.12, relating to the "advice and consent of the commissioners court as hereinafter provided."

It is agreed that the phrase "as hereinafter provided" is ambiguous in that its inclusion renders the first sentence of Sec. 10 capable of two constructions. Appellant contends that the ambiguity was caused by the Legislature's inadvertent omission of a comma immediately before the phrase, and since the punctuation should not control or effect the intention of the Legislature, Art. 11, Vernon's Ann.Civ.St., the Legislature obviously intended the "as hereinafter provided" to refer to something that actually was thereinafter provided in the statute. Under this construction, the statute would provide that the judge or judges are authorized, with the advice and consent of the commissioners court, as hereinafter provided, to employ and set the salaries of probation officers, and the "advice and consent of the commissioners court" would remain intact as a requisite for implementation of the adult probation law. Appellees' position is that the ambiguity, in view of both the expressed and implied intent of the Legislature, requires the phrase "with the advice and consent of the commissioners court" to be superfluous and disregarded, as expressed in the Attorney General's opinion and declared in the trial court's judgment.

But we believe a more proper construction results from consideration of the statute as a whole. Where the language of a statute is ambiguous, construction becomes necessary, Koy v. Schneider, 110 Tex. 369, 221 S.W. 880 (1920), to ascertain the expressed intention of the Legislature. The intention must be ascertained from the entire act, and not from isolated portions thereof. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951). Initially, it must be presumed that the Legislature meant to employ the words used in the statute. The significance of the words used, once the legislative purpose is ascertained, may be restricted or enlarged in order to effectuate that purpose and to give the statute the intent manifested by the lawmakers. Texas & N. O. Ry. Co. v. Railroad Commission of Texas, 145 Tex. 541, 200 S.W.2d 626 (1947).

In enacting the adult probation law, the Legislature expressed its purpose in Sec. 1, as follows:

"Sec. 1. It is the purpose of this Article *to place wholly within the State courts*

of appropriate jurisdiction the responsibility for determining when the imposition of sentence in certain cases shall be suspended, the conditions of probation, and the supervision of probationers, in consonance with the powers assigned to the judicial branch of this government by the Constitution of Texas. * * * It is the final purpose of this Article to remove from existing statutes the limitations, other than questions of constitutionality, that have acted as barriers to effective systems of probations and paroles in the public interest."

In considering the purpose expressed in Sec. 1, the Attorney General of Texas in his Opinion No. M–393 (1969) made the following concise comments:

"To effectuate the expressed purpose of the statute, the Legislature imposed certain powers and duties on the judges of courts having original jurisdiction of criminal actions. The judge of the court which has jurisdiction of the case may suspend the imposition of the sentence and may place the defendant on probation and/or impose a fine commensurate with the offense committed 'when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby * *' (Section 3). The judge must determine the terms and conditions of the probation (Section 6). The court, further, *must* supervise any person placed on probation (Section 3), and it is implicit in the statute that probationers be closely supervised since the court is empowered to alter or modify the terms of probation at any time during the period of probation (Section 6), reduce or terminate probation when the defendant has satisfactorily completed one-third of the original probationary period or two years of probation, whichever is less (Section 7), and issue a warrant for the arrest of the defendant should any of the terms of probation be violated (Section 8). Moreover, only the court in which the defend-

ant was tried may exercise the powers enumerated above unless the court has transferred jurisdiction to another court *with the consent* of such court (Section 5). Thus, the judge has the full responsibility of seeing that the terms and conditions of probation are enforced.

"Under certain conditions, the jury may recommend probation in the verdict. Where such recommendation is made, the court *must* grant probation (Section 3a) and supervise the defendant during the subsequent period of probation (Section 3). * * *

"Clearly, the intent of the Legislature as expressed in the body of the statute is primarily the same as the purpose stated in the first part of Section 1, Article 42.12: to place the responsibility of suspending the imposition of sentences, determining conditions of probation, and supervising probations in consonance with the powers assigned to the judicial branch by the Constitution of Texas."

 It·is certain that the manifest intent of the Legislature in enacting Art. 42.12 was to invest in the district judges great responsibility for carrying out a proper probation program in the respective judicial districts, and to empower them with the authority to do so. In conformity with the purpose and assigned responsibility, the Legislature, in Sec. 10, imposed upon the judges the further responsibility of appointing probation officers and designating their salaries. And yet, the Legislature, in this connection, inserted the phrase "with the advice and consent of the commissioners court as hereinafter provided." Under the circumstances, we think the Legislature intended that the judges should consult with and seek the advice of the commissioners court or courts involved. In no other practical way could the judges be apprised factually of the financial status of the county, the physical facilities available and other pertinent information necessary for a realistic determination of the proper probation program. Once the probation program

is determined in the light of the circumstances, the "consent" required of the commissioners court is to budget, appropriate and pay the expenditures established for the salaries of probation personnel appointed and office disbursements, so long as the expenditures are necessary and reasonable to discharge the essential business of the court. In giving effect to the phrase "with the advice and consent of the commissioners court as hereinafter provided" we disagree with the Attorney General and the trial judge in their conclusions that the phrase is superfluous and must be disregarded, and order the trial court's judgment modified accordingly. Since the presumption of necessity and reasonableness rests with the judges carrying the responsibility for administration, we agree with the trial court that in any dispute as to the necessity and reasonableness of the number of probation personnel or the expenditures for the probation program, the burden of proof must rest with the commissioners court to show that the judges' actions are so unreasonable, arbitrary or capricious as to amount to an abuse of discretion. No point of error that the action of the defendant district judges is unnecessary or unreasonable is brought forward.

Under any different construction of the statute, and particularly under the view advanced by appellant, the clear intent of the Legislature to impose "wholly within the state courts" the responsibility of providing for, and supervising the administration of, probation would be frustrated by taking away from the district judges the authority to discharge their responsibilities. Investing in the commissioners court the exclusive consent to implementation of the probation program would require, at least, that a majority of the commissioners courts within a multi-county judicial district give consent to each appointment, salary change, and expense item ordered by the district judge. It is of course possible that such consent would require unanimity of the commissioner courts within the judicial district. The prospect of frequent hearings before as many as six county commission-

ers courts, during which a district judge each time would have the burden of proving the necessity and reasonableness of the need in carrying out his duty under the law, is not commensurate with the Legislature's intent established throughout the statute. The expressed purpose of the Legislature to "remove * * * existing * * * barriers to effective systems of probation" would be thwarted completely by the erection of unanticipated barriers that could destroy the effectiveness of the probation program. Thus, "advice and consent of the commissioners court" demonstrably does not mean that the commissioners court could capriciously or arbitrarily ignore the appointment of and setting of compensation for probation personnel by the district judge. To give the phrase the converse meaning would nullify the authority given by the legislature to the district judges. This construction would render the commissioners court the sole arbitrator of the necessity for and appointment of probation personnel, if any it chose to approve, and the designation of their compensation, contrary to the statutory expression. Of course, the effect would be to render nugatory the express language of the statute.

Appellant urges that the decision in Vitopil v. Ware, 280 S.W.2d 378 (Tex.Civ. App.—Waco 1955, no writ), construing the phrase "express consent and approval of the Commissioners Court" used in the statute there under consideration to mean that the commissioners court must give its approval before the district judge's order was effective, is controlling of the meaning of the phrase now before us. We do not agree. In *Vitopil* the court was considering an unambiguous, clear and detailed statute providing that any increase in the county auditor's salary, after it was originally set by the district judge, "shall only be allowed or permitted with the express consent and approval of the Commissioners Court * * *." There, the court found a clear and unambiguous legislative intent that the commissioners court shall approve any proposed salary increase, contrary to

our holding as to the legislative intent in the present case. Also, it may be noted that the statute being considered in *Vitopil* was concerned with the auditing of county books—a subject within the peculiar knowledge of the county commissioners court. Here we are concerned with the subject of probation administration—a subject not only peculiarly within the knowledge of the district judges, but one specifically entrusted to the district judges. Certainly the expressed legislative intent in the statute in *Vitopil* did not involve the necessity of vesting the district judge with the responsibility and commensurate authority with which the Legislature intended he be vested under Art. 42.12.

In reaching the conclusions expressed in this opinion, we have carefully read and considered the opinions of the courts of other jurisdictions cited by counsel in their extensive briefs, as well as cases examined in the court's independent research. The holdings are not uniform,[4] and we do not believe any extension of this opinion to discuss the various holdings is warranted since the material determination is the proper construction to be given the particular provisions of a Texas statute. Suffice to say that the majority of the opinions hold that a statute providing for approval of the judges' actions by the fiscal authority means that there is a ministerial duty to approve such actions in the absence of a clear abuse of discretion, with the burden of proving the abuse of discretion being placed on the fiscal authority challenging the action.[5]

Appellant has challenged the trial court's conclusion of law that in the absence of a constitutional prohibition the judges have the inherent power to provide for an adult probation office and fix expenditures therefor without the approval of any nonjudicial agency of the government. While it may be an exercise in semantics, when the courts speak of "inherent" powers, we believe they actually are speaking of "implied" powers. "Inherent" means something firmly infixed, as in a constitution from which the judiciary derives its initial powers. "Implied" has the connotation of something virtually involved as a requisite to the performance of a function. As our Supreme Court stated in Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270 (1939):

"Under our judicial system our courts have such powers and jurisdiction as are defined by our laws constitutional and statutory. Under our system there is no such thing as the inherent power of a court, 'if, by that, be meant a power which a court may exercise without a law authorizing it'. Messner v. Giddings, 65 Tex. 301. Of course, jurisdiction is granted by law when it is either directly conferred or ought to be implied from the jurisdiction directly granted. In other words, our courts have such powers and jurisdiction as are directly provided by law, and, in addition thereto, they have such further powers and jurisdiction as are reasonable, proper and necessary,— that is, as ought to be inferred, from the powers and jurisdiction directly granted."

---

4. For example, a statute authorizing the judiciary to appoint probation personnel and fix their compensation within minimum and maximum amounts was declared an unconstitutional delegation of legislative power by the West Virginia Supreme Court in State ex rel. Richardson, Judge, et al. v. County Court of Kanawha County, et al., 138 W.Va. 885, 78 S.E.2d 569 (1953); but effect was given a similar statute, which subjected the salaries to the approval of the county commissioners, as confirming the inherent powers of the courts to incur necessary and reasonable expenses in the performance of

judicial duties, which were required to be paid absent a clear showing that such are unreasonable and injustified, by the Colorado Supreme Court in Smith v. Miller, 153 Colo. 35, 384 P.2d 738 (1963), and by the Arizona Supreme Court in Birdsall v. Pima County (Arizona), 475 P.2d 250 (1970).

5. See Birdsall v. Pima County (Arizona), 475 P.2d 250 (1970); Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860 (1960). But cf. Judges for the Third Judicial Circuit v. County of Wayne, 383 Mich. 10, 172 N.W.2d 436 (1969).

We have no doubt that a district judge has the implied power to appoint probation personnel and set their compensation in the event such action is essential to the continuing effective administration of the business of the court. But since we have sustained the actions of the defendant district judges on the basis of the constitutionality and construction of the statute empowering them to act, it is not necessary that we determine whether, under the facts in this case, the defendant district judges were or were not authorized to take the actions they did under the implied powers of the judiciary.

Appellant objected to some of the trial judge's findings of fact and conclusions of law and requested other findings and conclusions that the trial judge refused to make. Some of these we have noticed in the course of this opinion and some are referenced to the implied powers of the judiciary. We have reviewed each of the issues, but except as they are passed upon in this opinion, we believe them to be immaterial in view of the conclusions we have reached.

■ Finally, appellant assigns error to the trial court's holding that Crosby County was not a necessary party to this action. The Texas Uniform Declaratory Judgment Act provides that all persons shall be made parties who have or claim any interest which would be affected by the declaratory judgment. Appellant filed this suit seeking a declaratory judgment and did not choose to make Crosby County a party. Appellant made no attempt to bring that county in as a party before the case was called to trial as provided by Rule 37, Texas Rules of Civil Procedure. Appellant, therefore, waived its right to complain of the absence of Crosby County unless this action is one in which a valid judgment cannot be rendered without its joinder. We hold that the trial court had jurisdiction to determine whether Art. 42.12 was constitutional, insofar as it allowed the district judges to appoint probation personnel and fix their compensation without the consent of the county commissioners court, without the joinder of all counties and all county commissioners courts whose interests might be incidentally affected. Only a question of law is presented. Wichita County v. Robinson, 155 Tex. 1, 5–6, 276 S.W.2d 509, 512 (1954). Crosby County is not an "indispensable" party, without whose joinder the court would have no jurisdiction to decide the issues before it. Therefore, even assuming arguendo that Crosby County was a necessary party, plaintiff-appellant's failure to file a sworn pleading complaining of a defect of parties in the suit, as provided by Rule 93, T.R.C.P., constituted a waiver of any defective non-joinder of a necessary party. Aetna Life Insurance Co. v. Creel, 390 S.W.2d 522 (Tex.Civ.App.—Houston 1965, writ ref'd).

The judgment of the trial court, as modified by this opinion, is affirmed.

ELLIS, C. J., not participating.