

# THE ATTORNEY GENERAL
## OF TEXAS

December 22, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Gib Lewis
Speaker
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-835

Re:  Whether section 26.08
of  the  Tax  Code,  which
permits a  tax rate  roll-
back  election  to    limit
school taxes, is unconsti-
tutional (RQ-1286)

Dear Speaker Lewis:

Section 26.08 of  the Tax Code  provides that if  the
governing body of a school district adopts a tax rate that
exceeds the   so-called  "effective   tax   rate"  calculated
pursuant to either section 26.04 or section 26.042 of  the
Tax Code by more than eight percent, the qualified  voters
of the  taxing  unit  by  petition  may  require  that  an
election be held to determine whether or not to reduce the
tax rate  adopted for  the  current year  to a  rate  that
exceeds  the   "effective  rate"  by  no   more  than  eight
percent. <u>See</u> Attorney  General  Opinions  JM-792   (1987);
JM-574 (1986).  Section 26.085 of  the Tax Code permits  a
tax rate rollback election, limiting the percentage of the
total tax  levy  of a  school  district dedicated  by  the
governing body of the school district to a junior  college
district under section 20.48(e) of the Education Code.

In Attorney General Opinion JM-792, we concluded that
section 26.07 of the Tax Code, which authorizes such a tax
rate rollback election for taxing units other than  school
districts, is unconstitutional  insofar as  it applies  to
counties.  You ask  whether sections 26.08  and 26.085  of
the Tax Code likewise  are unconstitutional.  We  conclude
that they are not.

Section 26.08 of the Tax Code sets forth the  follow-
ing relevant provisions:

(a) If the  governing  body of  a  school
district adopts a rate that exceeds the rate
calculated as provided  by Section 26.04  of

this code by more than eight percent, the qualified voters of the district by petition may require that an election be held to determine whether or not to limit the tax rate the governing body may adopt for the following year. . . .

. . . .

(e) If a majority of the qualified voters voting on the question in the election favor the proposition, the governing body may not adopt a tax rate in the following year that exceeds the rate calculated as provided by Section 26.04 of this code for that year by more than eight percent, except than in making the calculation under Subsection (d) of Section 26.04 of this code, the assessor shall use the amount of taxes determined as provided by Subsection (c) of Section 26.04 of this code in the year in which the tax increase that initiated the referendum occurred rather than the year in which the calculation occurs.

(f) For purposes of this section, local tax funds dedicated to a junior college district under Section 20.48(e), Texas Education Code, shall be eliminated from the calculation of the tax rate adopted by the governing body of the school district. However, the funds dedicated to the junior college district are subject to Section 26.085 of this code.

Section 26.085 of the Tax Code contains the following relevant provisions:

(a) If the percentage of the total tax levy of a school district dedicated by the governing body of the school district to a junior college district under Section 20.48(e), Texas Education Code, exceeds the percentage of the total tax levy of the school district for the preceding year dedicated to the junior college district under that section, the qualified voters of the school district by petition may require that an election be held to determine whether to limit the percentage of the total

> tax levy dedicated to the junior college district to the same percentage as the percentage of the preceding year's total tax levy dedicated to the junior college district.
>
>     . . . .
>
> (e) If a majority of the qualified voters voting on the question in the election favor the proposition, the percentage of the total tax levy of the school district for the year to which the election applies dedicated to the junior college district is reduced to the same percentage of the total tax levy that was dedicated to the junior college district by the school district in the preceding year. . . .

In Attorney General Opinion JM-792 (1987), we concluded that section 26.07 of the Tax Code, which authorizes a tax rate rollback election under certain circumstances for taxing units other than school districts, is unconstitutional insofar as it applies to counties. We based our decision upon specific language in article VIII, sections 1-a and 9, of the Texas Constitution that confers explicit authority on commissioners courts to set tax rates and levy ad valorem taxes upon property in the counties.

Article VIII, section 1-a, of the Texas Constitution contains the following relevant language:

> From and after January 1, 1951, the several counties of the State <u>are authorized to levy</u> ad valorem <u>taxes upon all property within their respective boundaries for county purposes</u> . . . <u>not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of this State</u>, provided the revenue derived therefrom shall be used for construction and maintenance of Farm To Market Roads or for Flood Control, except as herein otherwise provided.

Article VIII, section 9, of the Texas Constitution sets forth the following:

> [N]o county, city or town shall levy a tax rate in excess of Eighty Cents (80¢) on the One Hundred Dollars ($100) valuation in any one (1) year for general fund, permanent improvement fund, road and bridge fund and jury fund purposes; <u>provided further that at the time the Commissioners Court meets to levy the annual tax rate for each county it shall levy whatever tax rate may be needed for the four (4) constitutional purposes;</u> namely, general fund, permanent improvement fund, road and bridge fund and jury fund so long as the Court does not impair any outstanding bonds or other obligations and so long as the total of the foregoing tax levies does not exceed Eighty Cents (80¢) on the One Hundred Dollars ($100) valuation in any one (1) year.   (Emphasis added.)

We concluded that both provisions confer authority, not on the voters, but on the commissioners court, and the legislature by statute cannot remove governmental power conferred by the constitution.   Tex. Const. art. V, §18. <u>See generally</u> <u>Anderson v. Wood</u>, 152 S.W.2d 1084 (Tex. 1941); <u>Dodson v. Marshall</u>, 118 S.W.2d 621 (Tex. Civ. App. - Waco 1938, writ dism'd).   Because the legislature does not have the power to enact any law contrary to a provision of the constitution, <u>City of Fort Worth v. Howerton</u>, 236 S.W.2d 615 (Tex. 1951), we concluded that section 26.07 of the Tax Code is unconstitutional insofar as it applies to counties.

In answering your question, the first issue that we must address is whether the relevant constitutional provisions governing school districts confer the sort of authority on the school districts' trustees that sections 1-a and 9 of article VIII confer on county commissioners courts.

Article VII, section 1, of the Texas Constitution sets forth the following:

> Section 1.   A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, <u>it shall be the duty of the legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools</u>.   (Emphasis added.)

Article VII, section 3, of the Texas Constitution contains the following language:

> [T]he Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts and for the management and control of the public school or schools of such districts, whether such districts are composed of territory wholly within a county or in parts of two or more counties, and the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax not to exceed in any one year one ($1.00) dollar on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts, nor to independent or common school districts created by general or special law.

The underscored language of article VII, section 3 does not directly authorize school districts to set tax rates and levy property taxes. Instead, the provision authorizes "the Legislature . . . to pass laws for the assessment and collection of taxes in all said districts. . . ." See, e.g., Brown v. Truscott Independent School District, 34 S.W.2d 837 (Tex. 1931); Desdemona Independent School District v. Howard, 34 S.W.2d 840 (Tex. 1931); Cain v. Lumsden, 204 S.W. 115 (Tex. Civ. App. - Amarillo 1918, no writ). A school district's taxing authority is subject to the legislature's power to enact laws setting tax rates and providing for the assessment and collection of taxes. Section 26.08 of the Tax Code is such a law.

It has been suggested that article VII, section 3-b of the Texas Constitution confers upon school trustees

authority which cannot be circumscribed by section 26.08 of the Tax Code. We disagree.

Article VII, section 3-b, of the Texas Constitution provides the following:

> Sec. 3-b. No tax for the maintenance of public free schools voted in any independent school district and no tax for the maintenance of a junior college voted by a junior college district, nor any bonds voted in any such district, but unissued, shall be abrogated, cancelled or invalidated by change of any kind in the boundaries thereof. After any change in boundaries, the governing body of any such district, without the necessity of an additional election, shall have the power to assess, levy and collect ad valorem taxes on all taxable property within the boundaries of the district as changed, . . . in the amount, at the rate, or not to exceed the rate, and in the manner authorized in the district prior to the change in its boundaries, and further in accordance with the laws under which all such bonds, respectively, were voted. . . .

By its very terms, article VII, section 3-b, applies only in those instances in which there has been a change in a school district's boundaries. The amendment, as originally adopted in 1962, was intended to validate bonds issued by school districts in Dallas County whose boundaries had been changed. Acts 1961, 57th Leg., S.J.R. No. 6, at 1301. Section 3-b was amended in 1966 to apply to all counties and to include specifically junior colleges. Acts 1965, 59th Leg., H.J.R. No. 65, at 2230.

In the only supreme court case construing article VII, section 3-b, the Texas Supreme Court declared:

> This constitutional provision was added in 1966 to eliminate the need for new voter approval of bonds and taxes when authorized changes are made in the boundaries of school districts. <u>Once taxation has been authorized, a change in the school district's boundaries has no effect upon the power to tax</u>.

. . . .

> Article VII, section 3-b authorizes
> independent school districts to tax for
> school purposes in those instances in which
> the subject district was formed wholly by
> disannexation from an existing independent
> school district that possessed the power to
> tax.   (Emphasis added.)

Freer Municipal Independent School District v. Manges, 677 S.W.2d 488 at 490 (Tex. 1984).  In other words, article VII, section 3-b, authorizes taxation without the holding of an election to authorize such taxation as required by article VII, section 1, in those instances in which taxation has already been authorized by the requisite number of voters.  It does not transfer to school districts any power conferred upon the legislature by article VII, section 3.  We conclude that section 26.08 of the Tax Code is not inconsistent with article VII, sections 3 and 3-b, of the Texas Constitution.

It is also urged that section 26.08 of the Tax Code unconstitutionally violates article III, section 1, of the Texas Constitution, by effecting an improper delegation of legislative authority, and article I, section 28, of the Texas Constitution, by effecting a suspension of the laws. It is urged that section 26.08 improperly delegates to the voters the authority to set tax rates and improperly suspends section 26.05 of the Tax Code, which authorizes the governing body of taxing units to adopt a tax rate. We now turn to these constitutional provisions.

Article III, section 1, of the Texas Constitution provides:  "The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"  Article I, section 28, of the Texas Constitution provides the following:  "No power of suspending laws in this State shall be exercised except by the Legislature."

It is a maxim of constitutional law that the power conferred upon the legislature to make the laws cannot be delegated by that department to any other body or authority. Texas National Guard Armory Board v. McCraw, 126 S.W.2d 627 (Tex. 1939); Brown v. Humble Oil & Refining Co., 83 S.W.2d 935 (Tex. 1935), rehearing denied, 87 S.W.2d 1069 (Tex. 1935). The principle of non-delegation has certain important qualifications. See generally Annot., "Permissible limits of delegation of legislative

power," 79 L. Ed. 474   (1935).   For example, the legisla-
ture may   delegate   to   municipalities   local   legislative
power that is adequate to carry out the purposes for which
they were created.   See, e.g., Stanfield v. State, 18 S.W.
577 (Tex. 1892).   The United States Supreme Court declared
almost a century ago:

> It is a cardinal principle of our  system
> of government   that local   affairs shall   be
> managed by   local authorities,   and   general
> affairs by the central authority, and hence,
> while the rule is also fundamental that   the
> power to make laws cannot be delegated,   the
> creation of municipalities exercising   local
> self-government   has   never   been   held   to
> trench upon that rule.   Such legislation   is
> not regarded as a transfer of general legis-
> lative power, but rather as the grant of the
> authority to   prescribe   local   regulations,
> according to   immemorial practice,   subject,
> of   course,   to   the   interposition   of   the
> superior in cases of necessity.

Stoutenbaugh v. Hennick, 129 U.S. 141 (1889).

Article III,   section 1,   of the   Texas   Constitution
requires that a   law must   be so   complete in   all of   its
terms and provisions when it leaves the legislative branch
that nothing is left to   the judgment of the recipient   of
the delegated power.   See, e.g., Commissioners Court   of
Lubbock County v. Martin, 471 S.W.2d 100 (Tex. Civ. App. -
Amarillo 1971,   writ ref'd n.r.e.);   Gerst   v.   Jefferson
County Savings and Loan Ass'n,   390 S.W.2d 318 (Tex.   Civ.
App.   -   Austin 1965,   writ ref'd   n.r.e.).   The   rights,
duties, privileges, or obligations granted or imposed must
be definitely fixed or determined,   or the rules by   which
they are to be   fixed and determined   must be clearly   and
definitely established, when the act is passed.   Id.   The
test is whether the legislature has prescribed   sufficient
standards to guide the discretion conferred.   Commission-
ers Court of Lubbock County v. Martin,   supra; Moody   v.
City of University Park, 278 S.W.2d 912 (Tex. Civ. App.   -
Dallas 1955, writ ref'd n.r.e.).

Section 26.09 clearly sets forth sufficient standards
both with regard to   the calling of   an election and   with
regard to the consequences if an election were successful;
whatever discretion is   set forth in   the section   relates
only to its   execution.   Texas courts   have upheld,   under
article VII,   section 3,   of the   Texas Constitution,   the

authority of the legislature to create school districts, Frass v. Darrouzett Independent School District, 277 S.W. 751 (Tex. Civ. App. - Amarillo 1926, no writ); to change their boundaries, Tod v. City of Houston, 276 S.W. 419 (Tex. 1925); to enact curative statutes validating a district's existence, Lyford Independent School District v. Willamar Independent School District, 34 S.W.2d 854 (Tex. 1931); and to delegate to boards of trustees the authority to maintain public schools. Megargel County Line Independent School District v. Blewett, 278 S.W. 516 (Tex. Civ. App. - Fort Worth 1926), aff'd, 285 S.W. 271 (Tex. 1926). We see no reason why the legislature could not also delegate to voters the authority to compel the boards of trustees of school districts to reduce adopted tax rates upon a successful rollback election.

While the results of early Texas cases are inconsistent, see, e.g., State v. Swisher, 17 Tex. 441 (1856) and Stanfield v. State, 18 S.W. 577 (Tex. 1892), at least since 1920, Texas courts have upheld delegations of authority to voters or some other body in instances in which a statute whose complete execution and application to the subject matter was made to depend on the assent of those voters or some other body. See Trimmier v. Carlton, 296 S.W. 1070 (Tex. 1927); Spears v. City of San Antonio, 223 S.W. 166 (Tex. 1920); Delegation of Power in Texas to Agencies Other Than State Administrative Bodies, 16 Tex. L. Rev. 494 (1937). Analogously, we conclude that sections 26.08 and 26.085 effect no impermissible delegation of legislative authority in violation of article III, section 1, of the Texas Constitution.

The prohibition in article I, section 28, of the suspension of laws unless it is done by the legislature is frequently invoked when analyzing delegations of this sort. See, e.g., Attorney General Opinion H-1080 (1977); 16 Tex. L. Rev. 494, supra. It is urged that sections 26.08 and 26.085 of the Tax Code effectively suspend section 26.05, which authorizes the governing bodies of taxing units to adopt tax rates. If sections 26.08 and 26.085 actually provided that section 26.05 be inapplicable in those taxing units in which a successful rollback election occurred, perhaps an article I, section 28, argument could be made. But sections 26.08 and 26.085 do not so operate. The relevant provisions of subsection (e) of section 26.08 provides:

> If a majority of the qualified voters voting on the question in the election favor the proposition, the governing body may not

> adopt a tax rate in the following year that exceeds the rate calculated as provided by section 26.04 . . . by more than eight percent. . . . (Emphasis added.)

Section 26.085 also contains the underscored language. Section 26.08 and 26.085 do not effect any suspension of the governing body's authority to adopt a tax rate; they merely place a one-year ceiling or limitation on the rate that a governing body may adopt. The power to adopt a rate is still reposed with the governing body of a taxing unit, even in the event that a rollback election is successful. We conclude that sections 26.08 and 26.085 do not violate article I, section 28.

## S U M M A R Y

Sections 26.08 and 26.085 of the Tax Code, which authorize ad valorem tax rate rollback elections for school taxes, are constitutional.

Very truly yours,

*Jim Mattox*

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General